UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-3547(DSD/SRN)

General Mills, Inc. &
Subsidiaries,

        Plaintiff,

v.                                                            **ORDER**

The United States of America,

        Defendant.


    Joseph H. Selby, Esq., Robin L. Greenhouse, Esq., William L. Goldman, Esq. and McDermott, Will & Emery, 600 13th Street N.W., Washington, D.C. 20005 and Myron L. Frans, Esq., Nathaniel J. Zylstra, Esq. and Faegre & Benson, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, counsel for plaintiff.

    Ann C. Reid, Esq., Anne N. Graham, Esq., U.S. Department of Justice, 555 Fourth Street N.W., Washington, D.C. 20002, counsel for defendant.


This matter is before the court upon the parties' cross-motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiff's motion and denies defendant's motion.


**BACKGROUND**

Plaintiff General Mills, Inc. & Subsidiaries ("GMI Group") seeks a federal tax refund of $4,720,329 for alleged overpayments during its tax years ended May 31, 1992; May 30, 1993; May 29,

1994; May 28, 1995; and May 25, 1997 ("Tax Years").[1]  The parties have stipulated to all relevant facts.

During the Tax Years, General Mills, Inc. ("GMI") was the common parent of GMI Group - an affiliated group of corporations that filed consolidated federal income tax returns.  GMI maintained three employee retirement plans ("Plans") during the Tax Years, and employees of GMI Group ("GMI employees") could participate in any of the Plans adopted by the member corporation.  In 1989, GMI amended the Plans to include an employee stock ownership plan ("ESOP") component.  The ESOPs were created, maintained and operated as typical leveraged ESOPs, and all of their assets were held and owned by a single trust ("Trust").  The Trust purchased shares of GMI common stock for the ESOPs and financed these purchases through loans from outside lenders ("ESOP loans").  The shares were initially held in a suspense account and were later released to plan participant ("Participant") accounts upon payment of principal and interest on the ESOP loans.  GMI made contributions and paid dividends to the ESOPs that were used to pay

---

[1] The claimed refunds for the Tax Years are: $401,513 in 1992; $434,340 in 1993; $890,371 in 1994; $1,104,914 in 1995; $1,889,191 in 1997.  (Compl. ¶ 11.)

the principal and interest on the ESOP loans.  GMI deducted these contributions and dividends pursuant to I.R.C. §§ 404(a)(9) and 404(k)(2).[2]

Upon the termination of a GMI employee for any reason the Trust was required to distribute the value of the terminated employee's vested ESOP account.  The terminated employee could elect to receive either shares of GMI common stock or their cash equivalent ("Cash Distribution").  During the Tax Years, several terminated GMI employees chose to receive Cash Distributions.[3]  The Trust could satisfy its Cash Distribution obligations by using (a) the proceeds from the sale of shares of GMI common stock on the open market, (b) the proceeds of redemptions of shares of GMI common stock or (c) cash otherwise available.  During the Tax Years, GMI redeemed shares of GMI common stock held by the Trust ("Redemptive Dividends").[4]  The Trust used some of the proceeds from the Redemptive Dividends to satisfy portions of its Cash Distribution obligations ("Cash Distribution Redemptive

---

[2] The deductions for the Tax Years were: $14,912,548 in 1992; $15,484,502 in 1993; $16,273,689 in 1994; $16,596,188 in 1995; $14,579,359 in 1997.

[3] The Cash Distributions during the Tax Years were: $1,360,959 in 1992; $2,670,106 in 1993; $3,620,110 in 1994; $4,667,805 in 1995; $5,862,158 in 1997.

[4] The Redemptive Dividends proceeds during the Tax Years were: $1,436,174 in 1992; $1,020,426 in 1993; $4,107,588 in 1994; $2,697,636 in 1995; $5,570,650 in 1997.

Dividends").[5]  GMI filed this suit against the United States on August 31, 2006, seeking deductions for the Cash Distribution Redemptive Dividends pursuant to I.R.C. § 404(k)(1).  The parties filed cross-motions for summary judgment on August 31, 2007.

## DISCUSSION

### I.  Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### II.  § 404(k)(1) Deduction

GMI Group argues that the Cash Distribution Redemptive Dividends are deductible under § 404(k).  Section 404(k)(1) provides that a corporation "shall be allowed as a deduction for a taxable year the amount of any applicable dividend paid in cash by such corporation during the taxable year with respect to applicable

---

[5] The Cash Distribution Redemptive Dividends were: $1,280,358 in 1992; $1,176,241 in 1993; $2,542,502 in 1994; $3,155,139 in 1995; $5,570,650 in 1997.  In 1993 and 1995 the Cash Distribution Redemptive Dividends exceeded the Redemptive Dividends because the Cash Distribution Redemptive Dividends for those years included Cash Distributions made during the first ninety days of those years of the prior year's Redemptive Dividends proceeds.

employer securities." Thus, to qualify for a deduction, during the Tax Years GMI must have (1) paid an "applicable dividend," (2) in cash, (3) on "applicable employer securities."  An "applicable dividend" is any dividend paid in accordance with an ESOP's provisions that "is paid to the plan and is distributed in cash to participants in the plan or their beneficiaries not later than 90 days after the close of the plan year in which paid."  I.R.C. § 404(k)(2)(A)(ii).

Here, the stipulated facts establish that the Cash Distribution Redemptive Dividends satisfy § 404(k).  Specifically, the parties agree that the Redemptive Dividends "are essentially equivalent to dividends within the meaning of section 302(b)(1) of the Code and, therefore, are treated as dividends for purposes of sections 301 and 316 of the Code."[6]  (Supp. Stip. ¶ 93.)  Further, GMI paid the Redemptive Dividends to the Trust, and the Trust distributed portions of the Redemptive Dividends in cash within ninety days after the close of the plan year in which they were paid to terminated GMI employees in satisfaction of GMI's Cash Distribution obligations under the ESOPs.  (Stip. ¶¶ 80-81, 83, 94.)  Moreover, the Redemptive Dividends were paid in cash and the

---

[6] A redemption is considered a dividend for tax purposes when the redemption does not result in a "meaningful reduction of the shareholder's proportionate interest in the corporation." Davis v. United States, 397 U.S. 301, 313 (1970).

GMI common stock qualified as "applicable employer securities."[7] (Stip. ¶ 34, 80.) Therefore, the court determines that GMI Group's claimed deductions satisfy § 404(k),[8] and the deductions are allowed unless otherwise disallowed.[9]

---

[7] "'[A]pplicable employer securities' means, with respect to any dividend, employer securities which are held on the record date for such dividend by an employee stock ownership plan which is maintained by (A) the corporation paying such dividend, or (B) any other corporation which is a member of a controlled group of corporations."  I.R.C. § 404(k)(3).

[8] Defendant argues that the court should avoid this interpretation of § 404(k) because GMI Group would receive a double deduction.  A double deduction occurs when a taxpayer is twice allowed a deduction for the same expenditure or loss.  See Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 68 (1934).  It is well established that "the Code should not be interpreted to allow [taxpayers] the practical equivalent of [a] double deduction absent a clear declaration of intent by Congress."  United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969) (citations omitted).
   Here, there are three separate transactions - two of which resulted in separate cash expenditures by GMI.  First, GMI distributed shares of its common stock to the Trust in exchange for cash obtained from the ESOP loans.  Second, GMI paid dividends on its stock and made other cash contributions to the Trust that the Trust used to pay off the ESOP loans.  Third, GMI paid cash to the Trust to redeem the GMI common stock held by the Trust, some of which the Trust used to satisfy its Cash Distribution obligations.  Defendant argues that the three separate transactions should be treated as an integrated whole so as to reflect that GMI only incurred a net loss from the second transaction but is seeking deductions for the second and third transactions.  The court finds no support for such a proposition.  Rather, the three transactions are better understood separately.  When viewed in this light, GMI claims deductions for separate payments made in the second and third transactions.  Therefore, a deduction under § 404(k) does not constitute a double deduction.

[9] This reading of § 404(k) accords with that of the only other courts to consider this issue facing similar facts.  See Boise Cascade Corp. v. United States, 329 F.3d 751, 756 (9th Cir. 2003); Conopco, Inc. v. United States, Civ. No. 04-6025, 2007 U.S. Dist.
(continued...)

**III.  § 162(k)(1)**

Defendant argues that even if the Cash Distribution Redemptive Dividends are deductible under § 404(k), the deductions are disallowed by § 162(k).  Before its 1996 amendment, § 162(k)(1) provided that "no deduction otherwise allowable shall be allowed under this chapter for any amount paid or incurred by a corporation in connection with the redemption of its stock."[10]  Defendant contends that the germane transactions are the Redemptive Dividends paid from GMI to the Trust and that GMI made these payments "in connection with the redemption of its stock."  GMI Group counters that the focus for purposes of § 162(k) is the Cash Distribution Redemptive Dividends paid from the Trust to the terminated GMI employees and that these payments were not made in connection with the redemption of GMI's stock.  The court agrees with GMI Group.

Section 162(k)'s express terms apply only to "deduction[s] otherwise allowable."  In this case, GMI Group does not claim that the Redemptive Dividends are deductible.  Rather, GMI Group only

---

[9](...continued)
LEXIS 52306, at *7-8, 24 (D.N.J. July 18, 2007).

[10] Congress amended § 162(k)(1) in 1996, effective for tax years ending after September 13, 1995, to replace "the redemption of its stock" with "the reacquisition of its stock or of the stock of any related person (as defined in section 465(b)(3)(C))."  See Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1704(p)(1), 110 Stat. 1755, 1886 (1996).  This amendment does not affect the court's analysis.

seeks deductions for the Cash Distribution Redemptive Dividends,[11] which, as noted above, are deductible "applicable dividends" under § 404(k).  Section 162(k) can not apply to transactions for which no deduction is sought.  Therefore, the appropriate transactions for analysis under § 162(k) are the Cash Distribution Redemptive Dividends.  The remaining issue is whether the Cash Distribution Redemptive Dividends were paid in connection with the Redemptive Dividends.

The legislative history of § 162(k) suggests a broad reading of its "in connection with" language.  H.R. Rep. No. 99-841 (1986), 1986 U.S.C.C.A.N. 4075, 4256-57.  Nevertheless, the same legislative history cautions that not all otherwise allowable transactions that are "proximate in time and arising out of the same general circumstances" as a redemption are disallowed by § 162(k).  Id.  "For example, if a corporation redeems a departing employee's stock and makes a payment to the employee in discharge of the corporation's obligations under an employment contract, the payment in discharge of the contractual obligation is not subject to disallowance under this provision."  Id.  Therefore, § 162(k) is best read more narrowly as disallowing deductions for "fees and

---

[11] Specifically, GMI Group claims deductions for the $13,724,890 in Cash Distribution Redemptive Dividends, not the $14,832,474 in Redemptive Dividends.  (Stip. ¶¶ 80, 83.)

other expenditures 'necessary and incident' to repurchase which would otherwise be deductible business expenses." Boise Cascade Corp., 329 F.3d at 758.

In this case, the Cash Distribution Redemptive Dividends are not expenditures "necessary and incident" to the Redemptive Dividends. If a terminated GMI employee elected to receive a Cash Distribution, the Trust had a duty, regardless of whether GMI agreed to redeem the stock, to pay the employee in cash the value of his or her vested ESOP account. (Stip. ¶ 67.) Indeed, although GMI often redeemed the stock held by the Trust so that the Trust could satisfy its Cash Distribution obligations, such redemptions were not mandatory, and GMI could, and on occasion did, reject the Trust's request for redemption. (Stip. ¶¶ 65-66.) Moreover, the Trust was not required to use the Redemptive Dividends to satisfy its Cash Distribution obligations, nor did it always use the Redemptive Dividends in such a manner. (Stip. ¶¶ 67-68.) For example, in 1992, GMI paid $1,436,174 to the Trust, but the Trust only distributed $1,280,358 to terminated GMI employees. Similarly, in 1994, GMI paid $4,107,588 to the Trust, but the Trust only distributed $2,542,502 to terminated GMI employees. Thus, although the Cash Distribution Redemptive Dividends arise out of the same general circumstances as the Redemptive Dividends, they are not expenditures made "in connection with" the Redemptive

Dividends.  Therefore, § 162(k) does not disallow the otherwise allowable § 404(k) deductions.

**IV.  § 404(k)(5)(A)**

Defendant further argues that Revenue Ruling 2001-6 disallows GMI Group's claimed deduction pursuant to § 404(k)(5)(A).  During the Tax Years, § 404(k)(5)(A) provided that the "Secretary[12] may disallow the deduction under paragraph (1) for any dividend if the Secretary determines that such dividend constitutes, in substance, an evasion of taxation."[13]  Revenue Ruling 2001-6, issued on February 5, 2001, during the pendency of the district court proceedings in Boise Cascade Corp., posits a hypothetical set of facts similar to those in Boise Cascade Corp. and this case and concludes without analysis that a § 404(k)(1) deduction "would be disallowed for payments in redemption of employer securities used to make distributions to terminating ESOP participants because such treatment would constitute, in substance, an evasion of taxation." Rev. Rul. 2001-6, 2001-1 C.B. 491.  The Office of the Chief Counsel of the Internal Revenue Service ("Chief Counsel") prepared and issued Revenue Ruling 2001-6.

---

[12] "The term 'Secretary' means the Secretary of the Treasury or his delegate."  I.R.C. § 7701(a)(11)(B).

[13] This section was amended effective for tax years beginning after December 31, 2001, to insert "avoidance or" before "evasion." Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. No. 107-16, § 662(b), 115 Stat. 38, 143 (2001).

GMI Group argues that § 404(k)(5)(A) does not apply because Revenue Ruling 2001-6 is not a determination by the Secretary. Defendant argues that the Chief Counsel "was acting as the delegate of the Secretary of Treasury when issuing Revenue Ruling 2001-6." The parties, however, have stipulated that:

> [t]here is no express delegation of authority from either the Secretary of Treasury, the General Counsel of the Department of Treasury, or the Commissioner of Internal Revenue to the Chief Counsel of the Internal Revenue Service specifically related to making a section 404(k)(5)(A) determination. The Secretary has delegated to the Commissioner the responsibility for the administration and enforcement of the Internal Revenue laws. The Chief Counsel is the chief law officer for the IRS and an Assistant General Counsel for the Treasury.

(Stip. ¶ 90.) In response to this stipulation, defendant correctly notes that internal delegations of authority do not have to be published to be valid. See, e.g., Lonsdale v. United States, 919 F.2d 1440, 1446 (10th Cir. 1990). Here, however, no record evidence establishes that the Secretary internally delegated his authority under § 404(k)(5)(A) to the Chief Counsel. In the absence of such evidence, Revenue Ruling 2001-6 cannot be considered a determination by the Secretary. It was the Chief Counsel, not the Secretary, who issued the ruling and determined that a § 404(k) deduction in cases like this would constitute, in substance, an evasion of taxation. Therefore, the court determines

that Revenue Ruling 2001-6 does not disallow GMI Group's § 404(k) deduction.[14]

## CONCLUSION

Accordingly, based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment is granted.
2. Defendant's motion for summary judgment is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   January 14, 2008

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court

---

[14] Because the court determines that § 404(k)(5)(A) does not apply, it need not consider GMI Group's arguments that § 404(k)(5)(A) requires a case-by-case determination by the Secretary as to whether a dividend constitutes an "evasion of taxation," or whether the dividends in this case in fact constitute "an evasion of taxation."